UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 14-38071-BKC-EPK |
| | Chapter 7 |
| ROLLAGUARD SECURITY, LLC, | |
| SHAMROCK JEWELERS, INC., | (Substantively Consolidated) |
| SHAMROCK JEWELERS LOAN | |
|     & GUARANTEE, LLC, | |
| | |
|     Debtors. | |
| _____/ | |
| | |
| ROBERT C. FURR not individually but | ADV. NO. |
| as Chapter 7 Trustee of the estate of the | |
| Debtors, | |
| | |
|     Plaintiff, | |
| | |
| v. | |
| | |
| G4I CAPITAL PARTNERS, INC., | |
| | |
|     Defendant. | |
| _____/ | |

## ADVERSARY COMPLAINT TO AVOID AND TO RECOVER AVOIDABLE TRANSFERS AND FOR OTHER RELIEF

Robert C. Furr (the "Trustee" or "Plaintiff"), not individually but as Chapter 7 Trustee of the bankruptcy estate of the Debtor, Rollaguard Security, LLC ("Rollaguard") and the substantively consolidated debtors Shamrock Jewelers, Inc., a Florida corporation, and Shamrock Jewelers Loan & Guarantee, LLC, (collectively, the "Shamrock Entities," and together with Rollaguard, the "Debtors"), files this Adversary Complaint against G4i Capital Partners, Inc. ("Defendant") to avoid and to recover avoidable transfers from the Debtors to the Defendant pursuant to Sections 544, 548, and 550 of Title 11 of the United States Code (the

"Bankruptcy Code"), Chapter 726 of the Florida Statutes, and for other relief under federal common law, and says:

## THE PARTIES, JURISDICTION AND VENUE

1. On December 30, 2014 (the "Petition Date"), Rollaguard filed a voluntary petition for relief under Chapter 7, Title 11 of the United States Code (the "Bankruptcy Code"). [Main Case, ECF No. 1]. Shortly thereafter, the Trustee was appointed as the duly acting Chapter 7 trustee for Rollaguard's bankruptcy estate.

2. On April 30, 2015, the Trustee filed his Adversary Complaint to Avoid and Recover Fraudulent Transfers, for Turnover, for an Accounting, Substantive Consolidation, Injunctive Relief and Other Relief [Adv. No. 15-01311-BKC-EPK-A, ECF No. 1] (the "Simpson Complaint") against Anthony T. Simpson, Debra Simpson and the Shamrock Entities.

3. On August 18, 2015, the Court entered final judgments (i) avoiding and ordering the recovery of transfers made by Rollaguard to or for the benefit of the Shamrock Entities in the amount of $6,072,237.80; (ii) avoiding and ordering the recovery of transfers made by Rollaguard to or for the benefit of Anthony and Debra Simpson in the amount of $2,208,407.60; (ii) adjudicating the Trustee's right to seek substantive consolidation as to the Shamrock Entities; (iii) permanently enjoining the use of any asset transferred by the Debtor to the Shamrock Entities or the Simpsons, or any entity or party acting under their direction and control; and (iv) imposing additional equitable remedies, constructive trusts and equitable liens with respect to the transfers at issue in the Adversary Complaint (collectively, the "Final Judgments").

4. On August 20, 2015, the Trustee filed an Expedited Motion to Substantively Consolidate Non-Debtors (i) Shamrock Jewelers, Inc.; and (ii) Shamrock Jewelers Loan & Guarantee, LLC [ECF No. 110] (the "Substantive Consolidation Motion"). On September 23,

2015, the Court granted the Substantive Consolidation Motion, and provided that creditors of the Shamrock Entities were to file claims in the consolidated estates by no later than December 22, 2015 [ECF No. 126] (the "Substantive Consolidation Order").  The Court explicitly reserved that, in granting the Substantive Consolidation Motion, all avoidance actions under federal or state law held by the Shamrock Entities against any third party were fully preserved for the benefit of the bankruptcy estate. [ECF No. 126 at ¶3].

5. On the Petition Date, Anthony Simpson was the Managing Member of Rollaguard.  David Tabony was the Chief Financial Officer and Vice President of Rollaguard and executed the bankruptcy petition on behalf of Rollaguard.  On the date of the Substantive Consolidation Order, Anthony Simpson was the President of the Shamrock Jewelers and Debra Simpson, his spouse, was Vice President of Shamrock Jewelers.   Mr. Simpson was the sole member of Shamrock Jewelers Loan & Guarantee, LLC.  Mr. Tabony and Ms. Simpson were each without knowledge of any wrongdoing by Mr. Simpson that caused harm to the Debtors.

6. Defendant is incorporated under the laws of the State of Delaware but regularly conducts business in the State of Florida.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

8. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (H) and (O).  The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

9. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS SUPPORTING THE CLAIMS

### A.     The Rollaguard Enterprise

10.     Prior to the Petition Date, Rollaguard represented itself as an industry-leading manufacturer of commercial portable security cases used to transport valuable items and sensitive documents (the "Rollaguard Case"). Rollaguard's website claimed it had been founded in 2009 by its CEO, Anthony T. Simpson, to provide "technologically advanced theft recovery services."

11.     Rollaguard also claimed that the Rollaguard Case was "the first security case of its kind" and represented that it had "developed the first security case to be used in the jewelry industry and across the globe for valuable merchandise, cargo, or sensitive documents."

12.     In theory, the Rollaguard Case was designed to provide traceable, real-time tracking, locating, and monitoring of the patented security cases via the internet or mobile device. Rollaguard purported to market the Rollaguard Case to jewelers, law enforcement agencies and the military. Rollaguard claimed that the Rollaguard Case filled "a much needed niche in the jewelry and insurance industry as well as other markets that require the protection and safe keeping of valuables while traveling or moving wares from one location to another discretely."

13.     Upon his appointment, the Trustee found little indication that Rollaguard was engaged in a viable business venture. There was no saleable inventory of Rollaguard Cases. There was no significant revenue generated from the sale of the Rollaguard Case. Indeed, it does not even appear that Rollaguard ever manufactured a saleable Rollaguard Case.

14.     Notwithstanding its lack of a viable business operation, Rollaguard raised capital from investors at a pace that quickly exceeded its legitimate business needs.

15. The Rollaguard's schedules reflect that it received capital investments, according to Rollaguard's bankruptcy schedules, exceeding $12.3 million (the "Capital Investments"). On the Petition Date, Rollaguard only had $640 in its checking account and approximately $30,000 worth of office equipment and materials on hand.

16. The terms of the Capital Investments varied. In certain instances, the Capital Investments were made through the issuance of subordinated and unsubordinated membership interests in Rollaguard. In other instances, the Capital Investments were documented with promissory notes. The Capital Investments, in whole or in part, appear to have been made in violation of existing agreements between the Debtor and certain of its earlier members and/or investors. They also appear to have been made without the knowledge and/or consent of certain members and/or investors whose existing interest in Rollaguard were diluted by virtue of Mr. Simpson's efforts to recruit new investors. Rollaguard did not maintain contemporaneous accounting records recording its financial activity.

B. **The Shamrock Entities**

17. The Shamrock Entities operated a jewelry store in Palm Beach Gardens from approximately 1965 until 2015. The Shamrock Entities purported business was the sale, purchase and repair of fine jewelry. The Shamrock Entities were also controlled, in part, by Anthony Simpson.

18. The Shamrock Entities also purported to engage in pawn brokerage. The Shamrock Entities advertised their "discretion and the knowledge that we can lend you more for your valuables." The Shamrock Entities claimed to offer "loans on jewelry, loose diamonds and other valuables" and certify that they will "secure and insure all of their loaned valuables… [in their]…private vault."

19. The Shamrock Entities purported to engage in a series of pawn-loan transactions whereby they would provide short-term high interest loans to members of the public that were collateralized by jewelry held in their vault (collectively, the "Pawn Loans"). The Pawn Loans were, either in whole or in part, another artifice designed to part investors from their money for an improper or deceptive purpose.

20. Mr. Simpson is reported to have told investors that the Shamrock Entities required capital to finance the Pawn Loans. It appears that Mr. Simpson raised capital from investors to finance the Pawn Loans. The Pawn Loans did not exist and were fictitious.

21. The financial affairs of Rollaguard and the Shamrock Entities were inextricably intertwined. Mr. Simpson attempted to pledge membership interests in Rollaguard in exchange for portions of the Capital Investments that were raised by Rollaguard but used by the Shamrock Entities. Rollaguard's bankruptcy schedules reveal that as much as $6,080,200 of the Capital Investments were raised by Rollaguard, but deployed in connection with the Shamrock Entities.

22. The Shamrock Entities, by and through the Pawn Loans, were used by Mr. Simpson as yet another artifice to fraudulently or deceptively obtain funds from investors. The pattern of activity between Rollaguard and the Shamrock Entities reflect nothing more than funds washing between them and being used indiscriminately to pay investors and to keep the Shamrock Entities and Rollaguard alive.

23. The Shamrock Entities, despite having utilized over $6 million in capital raised by Rollaguard, appear to have maintained relatively modest inventories at their store. At the time that the Trustee assumed control of the Shamrock Entities' assets, their inventory consisted of relatively inexpensive jewelry and watches, as well as the appurtenances of a retail jewelry store and repair facility. The books and records and records of the Shamrock Entities were poorly

maintained, if at all, and were often not reconciled on a regular basis and/or failed to account for large and voluminous cash transactions. Upon information and belief, Mr. Simpson's practice was to accommodate "off book" transactions with regular customers and prospective investors. The Shamrock Entities ceased operating shortly prior to the entry of the Substantive Consolidation Order.

C. **The Transfers from the Debtors to the Defendant.**

24. In the four year period preceding the Petition Date, the Debtors made the transfers reflected on the Schedule attached hereto as Exhibit A, which is incorporated herein by this reference, to the Defendant. The transfers constituted transfers of an interest of Rollaguard (the "Rollaguard Transfers") and/or the Shamrock Entities (the "Shamrock Transfers") in property within the meaning of Chapter 5 of the Bankruptcy Code, Chapter 726 of the Florida Statutes, and other applicable law. For the reasons stated above and in the applicable counts set forth below, the Transfers are partially or entirely subject to avoidance and recovery by the Plaintiff for the benefit of the Debtors' creditors.

25. On August 15, 2013, Rollaguard purportedly executed a Promissory Note in favor of Defendant in the amount of $500,000.00. On September 14, 2013, Rollaguard allegedly executed a Convertible Loan Agreement in the amount of $3.75 million, bearing a stated interest rate of 18% and late fees of $8,333.00 per day (the "Alleged Note"). Defendant also claims that it was granted a security interest in certain of Rollaguard's property; however such security was never perfected and is void. The Alleged Note appears to be a usurious transaction in light of the stated interest rate and punitive late fees, which in total exceed $25,000 per month (representing approximately 80% default interest on an annualized basis, assuming the loan had ever been funded in full). Defendant made only partial advances under the Alleged Note yet extracted

7

from Rollaguard repayments of over $450,000, at a time when Rollaguard was not meeting its obligations to its creditors and was insolvent. Additionally, Defendant's principal, David Webb, extracted from the Debtors additional transfers in excess of $100,000, which he was not entitled to receive. Defendant's predatory lending practices have already resulted in it being ordered to cease and desist from engaging in predatory lending practices in the state of California and Arizona.

**D.     Conditions Precedent**

26.    All conditions precedent to the institution of this action have been performed, have occurred, have been waived or have otherwise been excused.

**E.     The Causes of Action**

### COUNT I
### Action to Avoid and Recover Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and 548 and Chapter 726 of the Florida Statutes
**(ROLLAGUARD TRANSFERS)**

The Trustee sues the Defendant and alleges:

27.    The Trustee repeats and realleges paragraphs 1 through 26 of his Complaint as if fully set forth herein.

28.    Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the Florida Statutes, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such

8

obligation was incurred, indebted; or (B)(i) to the extent applicable, received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

29. Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; (2) any immediate or mediate transferee of such initial transferee; or (3) any commercial conduit lacking good faith in receipt of such property.

30. The Rollaguard Transfers as reflected in the attached Exhibit "A" constitute transfers of an interest in property of Rollaguard to the Defendant as set forth therein within two years (under Section 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

31. The Rollaguard Transfers were made with actual intent to hinder, delay, or defraud creditors of the Debtor. Among other badges of fraud at or near the time of the Rollaguard Transfers: (i) Mr. Simpson was utilizing the Debtor to subsidize the operations of the Shamrock Entities; (ii) pursuant to the Rollaguard Transfers, the Debtor removed property from the reach of its non-insider creditors; (iii) the Debtor did not receive reasonably equivalent value in exchange for the Rollaguard Transfers; (iv) the Debtor was insolvent at the time of the

Rollaguard Transfers or became insolvent as a result thereof; (v) Mr. Simpson was misusing the Debtor to engage in various fraudulent or deceptive schemes at the time of the Rollaguard Transfers; (vi) Rollaguard was not paying its debts as they became due, and (viii) Rollaguard was transferring funds to Mr. Simson, directly and through the Shamrock Entities, for the payment of personal expenses for which Rollaguard received no benefit.

32. As a result of the above, the Trustee can avoid the Rollaguard Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests this Court enter a judgment against the Defendant, that: (i) avoids the Rollaguard Transfers to the Defendant and recovers same for the benefit of the estate; (ii) avoids any lien that Defendant may have perfected, if any, with respect to Rollaguard's assets (iii) awards to the Trustee the amount or value of the Rollaguard Transfers, plus pre-judgment and post-judgment interest and costs; (iv) disallows any claim that the Defendant may have against the Debtors; and (v) awards any other relief the Court deems appropriate.

### COUNT II
### Action to Avoid and Recover Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and 548 and Chapter 726 of the Florida Statutes
### (SHAMROCK TRANSFERS)

The Trustee sues the Defendant and alleges:

33. The Trustee repeats and realleges paragraphs 1 through 26 of his Complaint as if fully set forth herein.

34. Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the

10

Florida Statutes, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) to the extent applicable, received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

35. Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; (2) any immediate or mediate transferee of such initial transferee; or (3) any commercial conduit lacking good faith in receipt of such property.

36. The Shamrock Transfers as reflected in the attached Exhibit "A" constitute transfers of an interest in property of the Shamrock Entities to the Defendant as set forth therein within two years (under Section 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

37. The Shamrock Transfers were made with actual intent to hinder, delay, or defraud creditors of the Shamrock Entities. Among other badges of fraud at or near the time of the Shamrock Transfers: (i) Mr. Simpson was utilizing Rollaguard to subsidize the operations of the Shamrock Entities; (ii) pursuant to the Shamrock Transfers, the Debtor removed property from the reach of its non-insider creditors; (iii) the Shamrock Entities did not receive reasonably equivalent value in exchange for the Shamrock Transfers; (iv) the Shamrock Entities were insolvent at the time of the Shamrock Transfers or became insolvent as a result thereof; (v) Mr. Simpson was misusing the Shamrock Entities and Rollaguard to engage in various fraudulent or deceptive schemes at the time of the Shamrock Transfers; (vi) the Shamrock Entities were not paying their debts as they became due, and (viii) the Shamrock Entities were transferring funds to Mr. Simson, directly and through Rollaguard, for the payment of personal expenses for which the Shamrock Entities received no benefit.

38. As a result of the above, the Trustee can avoid the Shamrock Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests this Court enter a judgment against the Defendant, that: (i) avoids the Shamrock Transfers to the Defendant and recovers same for the benefit of the estate; (ii) awards to the Trustee the amount or value of the Shamrock Transfers, plus pre-judgment and post-judgment interest and costs; (iii) disallows any claim that the Defendant may have against the Debtors; and (iv) awards any other relief the Court deems appropriate.

## COUNT III
## UNJUST ENRICHMENT

The Trustee sues the Defendant and alleges:

39. The Trustee re-alleges paragraphs 1 through 26 above as if fully set forth herein.

40. The Trustee sues Defendant for unjust enrichment.

41. The Debtors conferred a benefit on Defendant by making the Shamrock Transfers/Rollaguard Transfers to the Defendant.

42. The Defendant knowingly and voluntarily accepted and retained the benefit conferred by the Debtors.

43. The circumstances are such that it would be inequitable and unjust for Defendant to retain the benefit conferred by the Debtors without paying the Trustee the value thereof.

44. The Defendant has been unjustly enriched at the expense of the Debtors.

45. The Trustee is entitled to the return of those amounts in which Defendant was unjustly enriched through disgorgement or any other appropriate remedy.

WHEREFORE, the Trustee respectfully requests this Court enter a judgment against the Defendant, in the amount in which it was unjustly enriched, together with interest and costs, and for such further relief as the Court may deem just and proper.

F. **Reservation of Rights**

46. The Trustee reserves his right to amend this Complaint to assert any additional claims for relief against the Defendant as may be warranted under the circumstances allowed by law.

Respectfully submitted this 29<u>th</u> day of December, 2016.

                                        GENOVESE JOBLOVE & BATTISTA, P.A.
                                        Special Counsel to the Chapter 7 Trustee
                                        100 S.E. 2nd Street, Suite 4400
                                        Miami, FL  33131
                                        Tel.: (305) 349-2300
                                        Fax.: (305) 349-2310

                                        By:<u>/s/  Jesus M. Suarez</u>
                                              John H. Genovese, Esq.
                                              Florida Bar No. 280852
                                              Jesus M. Suarez, Esq.
                                              Fla. Bar No. 60086

**EXHIBIT "A"**

**Rollaguard Security, LLC ("Debtor"), Case No.: 14-38071**

Detail of Disbursements - Rollaguard & Shamrock

| Bank Account | Entity | Type | Clear Date | Number | Grouping | Payee | Cash Disbursements |
|---|---|---|---|---|---|---|---:|
| TD 5193 | Rollaguard | Check | 10/24/13 | 50001 | Rollaguard-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 11,100.00 |
| PNC 7996 | Rollaguard | Wire | 12/30/13 | | Rollaguard-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 275,000.00 |
| PNC 7996 | Rollaguard | Debit | 01/07/14 | | Rollaguard-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 55,000.00 |
| PNC 7996 | Rollaguard | Debit | 01/08/14 | | Rollaguard-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 50,000.00 |
| PNC 7996 | Rollaguard | Debit | 01/09/14 | | Rollaguard-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 50,000.00 |
| PNC 7996 | Rollaguard | Debit | 01/17/14 | | Rollaguard-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 10,000.00 |
| Chase 0681 | Rollaguard | Wire | 06/06/14 | | Rollaguard-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 10,000.00 |
| | | | | | **Rollaguard-G4I Capital Partners, Inc. Total** | | **461,100.00** |
| PNC 7988 | Shamrock | Wire | 11/21/13 | | Shamrock-G4I Capital Partners, Inc. | G4I Capital Partners, Inc. | 10,000.00 |
| | | | | | **Shamrock-G4I Capital Partners, Inc. Total** | | **10,000.00** |
| | | | | | **G4I Capital Partners, Inc. Total** | | **$ 471,100.00** |